---

In re PACE et al.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. ATTORNEY AND CLIENT ☞38—PRACTICE OF LAW BY CORPORATION—STATUTE—"PRACTICING LAW."

Where a corporation, known as the "Corporation Company of Delaware," maintained an office in New York City and distributed circulars to attorneys at law, offering either to incorporate companies under the laws of Delaware or to furnish all the necessary forms, etc., for the attorneys to do so themselves, and thereafter, through respondents, New York attorneys, who acted as forwarders to the home office in Delaware, incorporated three companies, respondents were guilty of a violation of Penal Law (Consol. Laws, c. 40) § 280, as amended by Laws 1909, c. 483, and Laws 1911, c. 317, prohibiting the practice of law by corporations, since "practicing law" is not limited to appearing in court, or advising and assisting in the conduct of litigation, but embraces the preparation of pleadings and other papers incident to actions and special proceedings, conveyancing, the preparation of legal instruments of all kinds, and the giving of all legal advice to clients, and action taken for them in matters connected with the law, including the preparation of papers requisite for the incorporation of a company and the incidental advice necessarily given in connection therewith.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 51, 61; Dec. Dig. ☞38.

For other definitions, see Words and Phrases, First and Second Series, Practice of Law.]

2. ATTORNEY AND CLIENT ☞58—IMPROPER CONDUCT—PUNISHMENT.

Where attorneys, who assisted a corporation in practicing law, by the preparation of incorporation papers for its "clients," in violation of Penal Law, § 280, frankly met the charges preferred against them by the County Lawyers' Association, and stipulated all the facts; severing their relations with the corporation upon decision against them, and discontinuing their improper practice, while the court cannot wholly overlook their acts, which clearly amounted to professional misconduct, it will administer no further discipline than a censure.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 76–78; Dec. Dig. ☞58.]

Proceeding against Francis P. Pace and H. B. S. Stimpson, attorneys, charging them with assisting a corporation to practice law in violation of Penal Law, § 280. On motion to confirm the referee's report. Respondents censured.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Mason Trowbridge and Samuel Owen Edmonds, both of New York City, for petitioners.

Albert P. Massey, of New York City, for respondents.

SCOTT, J. The New York County Lawyers' Association has charged these respondents, composing the law firm of Pace & Stimpson, with unprofessional conduct, in that they directly assisted a corporation, known as the "Corporation Company of Delaware," to "render or furnish legal services or advice, or to furnish attorneys or counsel or to render legal services of any kind in actions or proceedings of any nature or in any other way or manner," in violation of section 280 of the Penal Law.

[1] The substance of the charges is accurately stated by the official referee as follows:

"That the Corporation Company of Delaware at divers times during the year 1914, in violation of section 280 of the Penal Law of the state of New York, advertised by means of printed circulars and pamphlets that it maintained an office in New York City, furnished legal advice, services, and counsel, and in particular the advice and service of the respondents in and about the organization of corporations under the laws of Delaware. That respondents, in violation of said section of the Penal Law, assisted the said corporation in said unlawful acts by authorizing and permitting the corporation to advertise and by agreeing to furnish their services and advice to such persons as might or did respond to said advertisements, and by furnishing the use of an office in the borough of Manhattan to the said corporation for the purpose of carrying on its said unlawful business, and by themselves distributing the said advertisements. Further, that the corporation actually has furnished legal services and advice through the respondents in and about the organization of corporations under the laws of Delaware, and that the respondents as its agents and employés for a consideration paid to them by it assisted such corporation in all these respects."

The facts in this case are not in dispute; the respondents having met the charges with the utmost fairness and frankness, stipulating all the relevant facts, but, of course, and with evident sincerity, insisting that they have done no wrong. The questions involved therefore are purely legal ones.

The Corporation Company of Delaware is a corporation of that state duly created and organized under its laws, and authorized, among other things, to organize corporations under the Delaware corporation laws. Its powers in this respect are very general and full. At various times up to the 9th day of September, 1914, the Corporation Company of Delaware sent through the mails in New York City to attorneys in New York certain printed advertisements or pamphlets, one of which, bore on its cover the words:

"Digest of the Delaware Corporation Law, 1913. New York Office, Pace & Stimpson, Room 915, 29 Broadway, Telephone 1303–4 Rector. Corporation Company of Delaware, Equitable Building, Wilmington, Delaware."

Another pamphlet, marked, is entitled "General Corporation Laws of the State of Delaware, with Amendments to Date, 1914," and bears the firm name and address of the respondents, described as the New York office of the company, on its cover; and another pamphlet, marked Exhibit C, is entitled "Delaware Corporations, Their Advantages," and also bears the firm name and address, etc., of respondents on its cover. The latter pamphlet sets forth certain advantages of incorporating in the state of Delaware, and on page 1 thereof contains the following statements:

"The New York office is completely and fully equipped to meet all the requirements of the New York bar.

"Telephone 1303-4 Rector and our representative will be at your office in a few minutes to give your business personal attention and to relieve you of all the detail work of incorporating if you so desire without extra charge.

"Or if you prefer we will furnish you with a set of forms, a copy of the law, or any information on the subject.

"We especially solicit inquiries.

"Corporation Company of Delaware.

"Room 915, 29 Broadway, New York City."

If incorporating corporations and the furnishing of forms, information, and personal attention in connection therewith be practicing law, then this company certainly maintained an office in New York for that purpose, and held out the respondents as operating that office. It is agreed that the only acts of the respondents in connection with the Corporation Company of Delaware and the formation of certain corporations were receiving applications at their office in New York for the formation of three certain corporations under the laws of Delaware; that in each case the proposed incorporators filled out a blank form, and respondents personally or through some one in their office caused the said blanks, properly filled out, to be forwarded to the Corporation Company of Delaware at Wilmington, and thereafter the said three corporations were duly incorporated in said state. Thereafter the Corporation Company of Delaware returned to respondents the incorporation papers, namely, charter, by-laws, books, etc., all prepared at the office of the company in Wilmington, and same were delivered by respondents to the incorporators, accompanied by bills which were paid by the incorporators. These bills were made out to the Corporation Company of Delaware, but it appears by the testimony of respondents before the committee on discipline that they received from the Corporation Company a percentage of the fee of $50 paid to such company for each of such incorporations.

The respondents' connection with the company was undoubtedly that of its agents, employés, or representatives in the city of New York. In connection with a corporation formed apparently for one Schiffmacher, the Parker Alaska Gold Company, there was mailed through respondents' office, on the letter head of the Corporation Company of Delaware, which also bore the legend in red, "New York Office, Pace & Stimpson," etc., a form letter prepared by said Corporation Company, signed, "Corporation Company of Delaware, by Francis J. Pace," which transmits the certificate of incorporation, minute books, and other corporate papers. The letter clearly gives legal advice to Mr. Schiffmacher in connection with the formation of his Gold Company, was doubtless at least written in New York, and on its face purports to be written by said respondents in the name of the Corporation Company. Whatever may be argued as to the occupations of that company in its native state, this letter most assuredly furnishes evidence of legal advice and services, both by the Corporation Company of Delaware and the respondents, given and furnished in the state of New York.

Another letter, on the same letterhead, signed "Pace & Stimpson," is evidently supplemental to the one above mentioned. It transmits

the certificate book, corporate seal, and other papers pertaining to the Gold Company; and these letters, taken in connection with the other exhibits and the stipulations, leave no doubt in my mind, first, that the Corporation Company of Delaware carried on its business in this state by rendering and furnishing services or advice and furnishing attorneys and counsel, and, second, that respondents gave advice and services in the name and on behalf of said company, and assisted in the acts done by it, not only without the state of New York, but within it.

Upon receipt of the complaint or notice from the petitioner, the respondents discontinued all connection with the Corporation Company of Delaware, and since said date they have transacted no business for or in connection with said company. It should be stated that the profits of respondents in connection with this business were apparently insignificant, and that they have fully and fairly stated the facts, and have in no manner obstructed the petitioners in their investigation, and as above set forth discontinued all connection with the Corporation Company upon receipt of the complaint of the petitioner.

The question for consideration is whether the acts of respondents amount to a violation of the statute (section 280 of the Penal Law), or to professional misconduct. Of recent years many attempts have been made by corporations to engage, in one form or another, in the practice of the law. Restrictive legislation forbidding such practice has become common in the various states, and in this state in particular such legislation has assumed a most drastic form. Section 280, Penal Law, as amended by Laws 1909, c. 483, and Laws 1911, c. 317. This section, so far as applicable to the present case, reads as follows:

"Sec. 280. *Corporations and Voluntary Associations Not to Practice Law.* It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney at law for any person other than itself in any court in this state or before any judicial body, or to make it a business to practice as an attorney at law, for any person other than itself, in any of said courts or to hold itself out to the public as being entitled to practice law, or render or furnish legal services or advice, or to furnish attorneys or counsel or to render legal services of any kind in actions or proceedings of any nature or in any other way or manner, or in any other manner to assume to be entitled to practice law or to assume, use or advertise the title of lawyer or attorney, attorney at law, or equivalent terms in any language in such manner as to convey the impression that it is entitled to practice law, or to furnish legal advice, services or counsel, or to advertise that either alone or together with or by or through any person whether a duly and regularly admitted attorney at law, or not, it has, owns, conducts or maintains a law office or an office for the practice of law, or for furnishing legal advice, services or counsel. It shall be unlawful further for any corporation or voluntary association to solicit itself or by or through its officers, agents or employés any claim or demand for the purpose of bringing an action thereon or of representing as attorney at law, or for furnishing legal advice, services or counsel to a person sued or about to be sued in any action or proceeding or against whom an action or proceeding has been or is about to be brought, or who may be affected by any action or proceeding which has been or may be instituted in any court or before any judicial body, or for the purpose of so representing any person in the pursuit of any civil remedy. Any corporation or voluntary association violating the provisions of this section shall be

liable to a fine of not more than five thousand dollars and every officer, trustee, director, agent or employé of such corporation or voluntary association who directly or indirectly engages in any of the acts herein prohibited or assists such corporation or voluntary association to do such prohibited acts is guilty of a misdemeanor. The fact that such officer, trustee, director, agent or employé shall be a duly and regularly admitted attorney at law, shall not be held to permit or allow any such corporation or voluntary association to do the acts prohibited herein nor shall such fact be a defense upon the trial of any of the persons mentioned herein for a violation of the provisions of this section."

Thus the practice of law by a corporation is very clearly malum prohibitum in this state; but, quite apart from the statute, it is, and was before the statute, against public policy, and also malum in se. It has thus been held by the Court of Appeals in a most convincing opinion by Judge Vann. Matter of Co-operative Law Co., 198 N. Y. 479, 92 N. E. 15, 32 L. R. A. (N. S.) 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879. As was said in that case:

"No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly, by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. * * * The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation, engaged, not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state."

The whole question has recently been discussed with much learning and ability by Mr. Justice Shearn, writing for the Appellate Term in this Department. Meisel & Co. v. Nat. Jewelers' Board of Trade, 90 Misc. Rep. 19, 152 N. Y. Supp. 913. See also Grocers' & Merchants' Bureau of Nashville v. Gray (Court of Civil Appeals, Tenn.) N. Y. Law Journal, Dec. 5, 1915. It may be taken, therefore, as the law of this state, that it is unlawful for a corporation, whether domestic or foreign, to practice law in this state, and that any member of our bar who assists a corporation in violating the law in this respect is himself guilty of wrong-doing.

That the respondents were engaged in assisting the Corporation Company of Delaware in doing what it did in this state is indisputable, and the sole question to be considered, therefore, is whether or not what that company did and undertook to do within this state constituted practicing law. It is quite certain that the practice of the law is by no means limited to appearing in court, or to advising and assisting in the conduct of litigations. That, under modern conditions, constitutes but a fraction of the duties which lawyers are constantly called upon to perform for clients. In Matter of Duncan, 83 S. C. 186-189, 65 S. E. 210, 211 (24 L. R. A. [N. S.] 750, 18 Ann. Cas. 657), it is said:

"It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition

of the practice of law in this country, it embraces the preparation of pleadings, and other papers incident to actions and special proceedings, * * * on behalf of clients, before judges and courts, and, in addition, conveyancing, and preparation of legal instruments of all kinds, and in general all advice to clients, and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law. The following is a concise definition given by the Supreme Court of the United States: 'Persons acting professionally in legal formalities, negotiations, or proceedings by the warrant or authority of their clients may be regarded as attorneys at law within the meaning of that designation as employed in this country.' Savings Bank v. Ward, 100 U. S. 195 [25 L. Ed. 621]. Under these definitions there can be no doubt that Duncan engaged in the practice of law."

Thornton on Attorneys at Law, in section 69, defines the practice of law in the same terms. In Eley v. Miller, 7 Ind. App. 529, 535, 34 N. E. 836, 837, the court, while stating that as generally understood the practice of law is the doing or performing services in a court of justice, in any matter depending therein, said:

"But in a larger sense it includes the legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court."

That the definition of what constitutes the practice of law, stated in Matter of Duncan, supra, should, and will be, accepted and applied by the courts in this state, is clearly indicated by the cases of Matter of City of New York, 144 App. Div. 107, 128 N. Y. Supp. 999; Matter of Bensel, 140 App. Div. 944, 126 N. Y. Supp. 1121, affirmed 201 N. Y. 531, 94 N. E. 1091; Buxton v. Lietz (Mun. Ct.) 136 N. Y. Supp. 829; Id., 139 N. Y. Supp. 46. The statute from which we have quoted also includes among the things forbidden to be done by a corporation the rendition or furnishing of legal services or advice, the furnishing of attorneys or counsel, and the rendition of legal services of any kind in actions or proceedings of any nature, *or in any other way or manner*.

Judged by the foregoing definitions we consider that there can be no doubt that the work undertaken to be done, and in fact done in several instances by the Corporation Company of Delaware within this state involved, necessarily, "practicing law." It is true that the Legislature has made it so simple and apparently easy to incorporate a company that it often happens that laymen, guided by stationers' blanks, undertake to perfect incorporation without legal advice, and sometimes without untoward consequences. But this does not prove that the incorporation of a company according to statute does not involve, properly speaking, legal advice, which in practically every case is requisite, if there is to be assurance that the work, when done, has been done legally and properly. There is necessary the interpretation of statutes, the preparation of the proper papers, and a consideration of the nature of the corporation to be formed in order that it may meet the needs of its projectors. All this calls for the application of legal knowledge and skill and the consequent rendering of legal advice and services.

Naturally the degree of legal skill varies greatly with the nature and purposes of the projected corporation, but in all some degree is

required. It would be absurd to hold that the preparation of the pa-pers requisite for the incorporation of a company and the incidental advice necessarily given in connection therewith do not call for legal services and are not included within the definition of the "practice of the law." We are therefore clearly of the opinion that the acts which the Corporation Company of Delaware undertook to do and did do in this state constituted the practice of law herein and were in direct violation of the law of this state. Whether or not its acts were lawful in Delaware does not clearly appear and does not con-cern us. It is sufficient that they were unlawful here. If these acts were unlawful in this state, it is clear that the respondents assisted in and furthered them, and therefore shared in the doing of the un-lawful acts. For this they cannot escape responsibility, even although they erroneously believed that they were doing no wrong.

[2] Their actions, however, since these charges were made against them, commend them strongly to our consideration. Not only did they frankly meet the charges and stipulate all the facts, but they have severed their relations with the Corporation Company of Delaware, and have discontinued the practices for which they were criticized by the complaining Association.

Under these circumstances, while we cannot wholly overlook their acts, which clearly amounted to professional misconduct, we find no occasion for administering any further discipline than a censure. All concur.