BLACK & WHITE OPERATING COMPANY, INCORPORATED, RESPONDENT, v. EMIL GROSBART, APPELLANT.

Submitted February 14, 1930—Decided October 20, 1930.

For the appellant, *Harry Levin*.

For the respondent, *George F. Seymour*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a suit in the Orange District Court, wherein it was alleged that the defendant, a constable of Essex county, acting as agent for the Black & White Operating Company, under a writ of attachment issued out of the Second District Court, levied on the goods of Eva Fay, a non-resident of New Jersey, who later paid to the defendant the sum for which the attachment issued; whereupon the proceedings under the writ were discontinued. The plaintiff then requested the defendant to turn over to it the sum so collected as aforesaid, but the defendant continuously refused to pay it over.

From the states of the case, both original and supplemental, the following is made to appear.

Frank Kaul, president of the plaintiff corporation, signed an affidavit in the attachment suit in the District Court. Harry Levin, attorney, drew and had Kaul sign the affidavit and directed Grosbart, constable, to serve the process. The attachment was issued out of the Second District Court, endorsed in the name of Levin, as attorney, and Grosbart, constable, served it. The money demanded was paid to Grosbart under protest; he turned the cash over to Levin, attorney, in whose name the process was endorsed. When the case came up in the District Court, Kaul, president, attended and saw and heard Levin, acting as attorney for the corporation, discontinue the matter because the money had been paid. Thereafter Levin sent to the plaintiff corporation an accounting for the moneys so received, deducting the amount of his fees; but the plaintiff insisted that it had never retained Levin nor Grosbart, and sued the constable for the moneys he had received.

Kaul, president of plaintiff, testified that he took the bill against Fay to the office of a constable named Solsky, where the defendant Grosbart also had his office, and left the bill for collection (not saying with or for whom he left it); that an attachment was issued out of the Second District Court of Newark on the effects of Fay, and it was settled by payment of the amount to the defendant Grosbart under protest;

that Grosbart never paid the money to the plaintiff; that he saw Levin in the office but did not employ him to take the attachment case or collect the claim against Fay, but that he employed only the constable (not saying whom), and did not want an attorney.

Emil Grosbart, defendant, testified that he was a constable and handled the Fay case at request of Levin, attorney; that after the issuance of the writ of attachment defendant paid him the money under protest; that the work in Levin's office, in relation to the attachment, was by I. V. Davis, an attorney, with desk room with Levin.

Davis testified that he is an attorney; that he saw Kaul at his office with reference to the Fay matter; that he handled the matter; that Kaul told him to go ahead with the writ of attachment; that Levin was not present; that he called Grosbart and instructed him to take out the writ of attachment; that Kaul told him Satsky was not in and he had to have immediate action.

Harry Levin testified that he is an attorney-at-law; that Davis handled the Fay matter; that Grosbart turned over to him the money paid under protest by Fay; that she having paid, there was nothing further to do in the matter; that he (Levin) sent a check to the plaintiff, less his fee, but the check was returned.

The plaintiff had judgment in this case in the District Court and the defendant appealed to the Supreme Court, contending that his motion for nonsuit was improperly denied, and that the court erred in its charge to the jury. So says the Supreme Court in its *per curiam*. The brief used there by the defendant-appellant has been filed in this court, with the words "Court of Errors and Appeals" pasted over those of "Supreme Court." It contains much more than the argument of those questions. Here, defendant assigns as ground of reversal that the Supreme Court erred in affirming instead of reversing, the judgment of the District Court. This is proper, and entitled appellant to argue in this court all of the grounds assigned in the Supreme Court. The Su-

preme Court affirmed the judgment under review. Grosbart appeals from the Supreme Court to this court.

In his argument before this court counsel for defendant-appellant argues that the court erred in denying defendant's motion for the direction of a verdict in his behalf. This is an abandonment of the motion to nonsuit, and is argument addressed only to the denial of the direction of a verdict. The matter stood thus: When plaintiff rested the attorney for the defendant moved for a nonsuit for defendant Grosbart, which motion was denied and an exception granted; then Grosbart was sworn for the defense, as also were Davis, attorney, and Levin, attorney. Defendant then rested. Motion was made on his behalf for the direction of a verdict on the ground that the proof showed that Grosbart had no money belonging to plaintiff; that it had been paid to the plaintiff's attorney. The motion was denied and an exception taken and granted.

The Supreme Court in its *per curiam* said their examination of the case satisfied them that the nonsuit could not properly have been granted, and that there was contradictory evidence as to the employment of Levin, which raised a question of fact which the jury alone could determine. And this would clearly indicate that the court had in mind the refusal of the direction of a verdict after plaintiff and defendant had rested, rather than the refusal of nonsuit after the resting of the plaintiff, for the matters were not fairly in dispute until the witnesses for the defendant had testified. This makes the question properly arguable here on the question to direct a verdict; but the answer is the same as that made by the Supreme Court on the motion to nonsuit, namely, that "there was considerable contradictory evidence as to the employment of Levin and that raised a question which the jury alone could determine." A glance at the statement of facts will clearly show, we think, that there was a dispute as to his employment.

·At the conclusion of the state of the case settled by the judge, July 24th (year not stated, but it obviously was 1928), because the parties and their attorneys were unable to agree

as to it, it is stated: "Exceptions (plural) to the charge of the court to the jury taken and granted."

The Supreme Court says that a general exception taken to the charge cannot be considered, as it brings nothing before the court, and therefore the numerous errors alleged to exist in the instructions cannot be considered. This is the law. But the mistake of the Supreme Court in this case is one of fact. There are eight such exceptions, as appears from the supplemental state of the case, which was signed by the trial judge September 27th, 1928, and in it he says:

"The exceptions to the charge taken by the defendant's attorney were taken separately, to the following portions of the court's charge, each on the ground that the charge was erroneous in law and in fact, on immaterial matter, not in the case and prejudicial to defendant's case, the portions of the charge excepted to being as follows:" &c., &c., &c.

Then follow the eight particular exceptions to instructions delivered to the jury as above stated.

The Supreme Court said in its supplemental *per curiam* that without passing on the sufficiency of the supplemental state of the case, the court examined the reasons urged for reversal and found them without merit and therefore affirmed the judgment. We, too, have examined the reasons urged in the Supreme Court for reversal and find them without merit. In the state of the case there appear specifications of the determination of the District Court with which appellant was dissatisfied in point of law. They are twelve in number, but are lacking in merit, and are legally unsound.

The court charged the jury, *inter alia,* that they could find what the fact was as to the employment of Grosbart by the plaintiff; also ascertain as well from the evidence whether there had been an employment by the plaintiff of Levin as attorney; that if there was employment of the constable Grosbart by the plaintiff, the constable was under legal obligation to pay to the plaintiff such moneys as he might collect, and it was not his business to pay such moneys to an attorney, unless that attorney had, as matter of fact, been employed in the matter by the plaintiff; that there is an attorney in the

case and a direct denial, and the jury must ascertain the fact from the evidence; that the constable had a right to institute the attachment proceedings if he were employed to do so.

All this was correct under the proofs, but then the judge charged that the plaintiff did not necessarily have to employ a lawyer in the attachment proceedings, such employment being a voluntary act on its part; that if the plaintiff did employ an attorney then the plaintiff would be bound by such actions as the attorney might take in the court proceedings. This is both right and wrong—wrong in the assertion that the plaintiff, a corporation, did not have to employ a lawyer to institute, and appear in court in, the attachment proceedings; right in the assertion that if the plaintiff did employ an attorney that it would be bound by such actions as he might take in the court proceedings. So the incorrect assertion here was qualified by the statement that if the plaintiff employed a lawyer it would be bound; and it had already been put up to the jury to say whether the particular attorney was employed or not. The error residing in the charge was harmless. But the assertion that it was not necessary for plaintiff to have a lawyer in the attachment case was unsound.

The Practice act (*Comp. Stat., p.* 4055, § 17), provides that no person except in his own case or in the case of an infant shall be permitted to appear or prosecute any action in any court unless he is a licensed attorney-at-law of the Supreme Court of this state, who shall be under the direction of the court in which he acts. And in *New Jersey Photo Engraving Co.* v. *Schonert & Sons,* 95 *N. J. Eq.* 12, the Chancellor held that corporations, being artificial persons, cannot practice law; and that members of the bar only have audience in the courts. Therefore, it was necessary for the plaintiff corporation to have issued a writ of attachment through and in the name of an attorney, and have an attorney represent it before the District Court. This was done. However, there was conflicting evidence as to whether or not the plaintiff engaged the attorney Levin to represent it; and if it did not, he could

not justify the receipt of the money from the constable who collected it, or the deduction of a fee for himself for assuming to act as attorney. Of course the liability to the plaintiff here was that of the defendant constable.

The above observations are dispositive of the case at bar. Let the judgment under review be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, CAMP-BELL, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, MC-GLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.