BOYKIN, solicitor-general, *v.* HOPKINS *et al.*

No. 8430.   FEBRUARY 25, 1932.

*Bond Almand, Elbert P. Tuttle, Henry A. Beaman, William G. Grant, Stephens Mitchell,* and *Madison Richardson,* for plaintiff. *George G. Finch,* and *F. L. Breen,* for defendants.

HINES, J.   Joseph G. Hopkins and Frank C. Crawley filed in Fulton superior court their petition in which they prayed to be incorporated as "Legal Services Incorporated." The application for charter was brought under the Civil Code of 1910, § 2823, which provides that "The superior courts of this State shall have power to create corporations, except for banking, insurance, railroad, trust, canal, navigation, express, and telegraph companies, by compliance with" the provisions embraced in said section. Petitioners prayed that the right be granted to the corporation to "(a) Prepare abstracts of titles to real property.   (b) Render legal advice on all matters on questions of law.   (c) Render opinions as to the validity or invalidity of titles to real or personal property.   (d) Prepare and furnish its customers, when requested by them, briefs on any and all questions of law.   (e) Act as attorney in fact for the settlement or adjustment of any and all claims of any nature, including personal injury, property damage, and/or collection of accounts.   (f) Act as attorney in fact for its customers in procuring competent attorneys at law to represent such customers in any court or before any judicial body in this State in any contested or uncontested case or matter pending be-

fore such court or judicial body, when an attorney at law is necessary. (g) Prepare or draw any petition, answer, demurrer, plea, or other pleadings, order, appearance, or response of any sort to be filed in court by such customer. (h) Prepare or draw any will, trust agreement, deed, conveyance, or other legal instrument whereby rights or property is conveyed or secured to the parties to such instrument. (i) Furnish legal advice or legal services in connection with matters pertaining to the law, or to render such services or give such advice as to the law, where such contract for said services does not require an appearance in court. (j) Acquire and dispose of real estate." The solicitor-general of the Atlanta Judicial Circuit, acting for and on behalf of the State on relation of Bond Almand and others, instituted an action against the petitioners for charter, in which he alleged that they were causing the application for said charter to be advertised; that the State is interested in the allowance of the proposed charter; and that each of the acts, which it is sought to confer upon such corporation the right to do, constitutes the practice of law, which can not lawfully be performed by a corporation. The solicitor-general prayed that the incorporators be enjoined from further prosecuting said application for charter, in so far as it relates to the powers designated above as paragraphs (a), (b), (c), (d), (e), (f), (g), (h), and (i).

The defendants filed an answer in which they denied that the acts enumerated in their application for charter constitute the practice of law. The judge denied the application for an interlocutory injunction, upon the ground that, under the decision in *Atlanta Title & Trust Co.* v. *Boykin,* 172 *Ga.* 437 (157 S. E. 455), the restrictions as to the practice of law imposed under the various code sections of this State refer to the practice of law in the courts. To this ruling and judgment the solicitor-general excepted.

■ The first question for our determination is whether the above decision of this court, is authority for the proposition that the practice of law in this State is confined to practice in its courts. In other words, is that decision authority for the proposition that any person, natural or artificial, can perform acts which constitute the practice of law, if such acts are not done or performed in the courts of this State, but are done or performed out-

side of such courts? If the statement of the Justice who wrote the opinion in that case, as to what constitutes the practice of law, was concurred in by a majority of the Justices of this court, it would be authority therefor. This statement was not concurred in by a majority of the Justices of this court. The Chief Justice dissented. Justice Gilbert concurred specially, and the writer concurred only in the result. So there were only three Justices who can be said to have concurred in the statement upon this subject expressed by Justice Atkinson that "The restrictions upon the right to practice law refer to practice in the courts," and in effect do not extend to any legal matters performed outside of the courts. In that case the question was whether or not the charter of the Atlanta Title & Trust Company could be so amended as to confer upon that corporation the power "to prepare any and all papers in connection with conveyance of real and/or personal property that it may be requested to prepare by a customer." The solicitor-general and counsel associated with him therein insisted that the amendment sought by the title company, if allowed, would confer upon that company the right to practice law. The Chief Justice was of the opinion that the amendment would confer upon the title company the right to practice law; and for this reason he did not agree to the opinion or the result reached in that case. Justice Gilbert (as the writer understood) and the writer were of the opinion that the power to prepare any and all papers connected with the conveyance of real and personal property, which the title company might be requested to prepare by a customer, referred to the performance of mere clerical work, and did not constitute the practice of law. So the Chief Justice, Justice Gilbert, and the writer did not agree to the narrow and limited definition of what constitutes the practice of law, as was announced by Justice Atkinson in the opinion he wrote in that case. At the time the court had under consideration the decision of that case, the writer vigorously protested against the definition of what constitutes the practice of law, as given by Justice Atkinson in his opinion. The writer's opinion then was, and still is, that the definition of what constitutes the practice of law as announced by Justice Atkinson in that case was too limited and narrow. Besides, the decision in that case was by a majority only of the court, and therefore is not binding as a precedent. We are strongly and decidedly of the

opinion that the practice of law is not confined to practice only in the courts of this State.

■ At the time the decision was rendered in the case to which we have referred, and at the time the judgment was rendered in the case which we now have under consideration, the legislature of this State had never undertaken to define what constitutes the practice of law in this State. It is true that the Civil Code, § 4930, declares that persons who had been regularly licensed under the laws of this State before the adoption of the Code, and those who are thereafter licensed in the manner prescribed by law, are entitled to practice law in the courts of this State. It is likewise true that section 4931 declares that persons who are admitted to practice in the superior courts may practice in any other court of this State, except the Supreme Court, for which another and special license must be obtained. From these statutes Justice Atkinson drew the conclusion that the practice of law in this State is confined to practice alone in the courts of this State. The legislature in passing the statutes now embodied in these code sections were not dealing with the formulation of a definition of what then constituted the practice of law in this State. It was not the legislative purpose to define the practice of law in this State, but the legislature only intended to declare who were entitled to practice in the courts of this State. The purpose of these statutes is simply to define who could practice law in the various courts of this State. This is shown by other statutes passed by the legislature. The Civil Code, § 4932, declares that "Any male citizen, of good moral character, who has read law, and undergone a satisfactory examination as hereinafter prescribed, is entitled to plead and practice law in this State." This section does not limit the right to practice law to practice in the courts of this State alone, but confers the right to practice law generally in this State. So the act of 1916 (Acts 1916, p. 76), amending that section, provides that "Female citizens shall be admitted to the practice of law in this State upon the same terms and qualifications as now apply to male citizens." Here the right to practice law in this State is not limited to practice in the courts. So section 4933 provides that "Aliens who have been two years resident in the State . . are eligible to admission as attorneys at law." Each applicant for admission to practice law in this State is required to submit to an examination in

writing, which must be prepared by the board of examiners, covering all the topics and subjects a knowledge of which is, under existing laws, requisite to admission to the bar. This board is required to pass upon the merits of each examination, and is required to determine whether the applicant is qualified "to plead and practice in the several courts of this State, other than the Supreme Court." Civil Code (1910), § 4940. It may be said that the language, "to plead and practice in the several courts of this State," by implication defines what constitutes the practice of law in this State; but, for the reasons hereinbefore given, this provision of the law was never intended by the legislature to define what constitutes the practice of law in this State. This is shown by the provision of this law that all persons who have successfully passed the examination, and have obtained a certificate from the board of examiners to that effect, "may be duly licensed to practice law in this State upon taking the oath now provided by law, and may receive a license to practice." Civil Code (1910), § 4941. Here the license is not confined to practice in the courts of this State; but the succssful applicant is "licensed to practice law in this State." So we reach the conclusion that there is nothing in the statutes of this State, relating to the admission of attorneys to the bar and providing for the grant of licenses to them to practice law, which limits the right to practice solely to proceedings had in the courts of this State.

We come now to consider and determine what constituted the practice of law in this State at the time the application was made for the grant of the charter involved in this case, and what constituted the practice of law in this State prior to the act of August 7, 1931 (Acts 1931, pp. 191 et seq.), which now defines the practice of law in this State. We deem it necessary to determine what then constituted the practice of law, for the reason that the charter with which we are dealing was sought prior to the adoption of the above act. If this charter undertakes to authorize this corporation to practice law within the meaning of that term as it was understood at the date of the filing of the application for its grant, there was no authority of law for the grant thereof; and an order incorporating this company would be void so far as it undertook to confer upon it the power to practice law. As we have undertaken to show, no statute was passed in this State, which

undertook to define the practice of law, prior to the above act of August 7, 1931; and to determine what constituted the practice of law prior to the passage of that act we must look to the general law of force in this State at that time. In *Bird* v. *Breedlove, 24 Ga.* 623, this court held that there was no law in this State which restricted to attorneys at law the business of attending to applications for pardons. No authority was cited by the court to sustain this proposition, which was based upon the fact that the court knew of no law so restricting this business. Giving full effect to this decision, there is nothing therein which would authorize the grant of this charter, which, as we shall undertake hereafter to show, expressly confers upon the corporation the right to practice law, if the same were granted. In that case this court did not undertake to define what constituted the practice of law. We shall now undertake to do so.

The practice of law is not limited to the conduct of cases in court. State *v.* Richardson, 125 La. 644 (51 So. 673). "In a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts, by which legal rights are secured, although such matter may or may not be depending in a court." 49 C. J. 1313 (§ 5) 4; Eley *v.* Miller, 7 Ind. App. 529 (34 N. E. 836). So where the business of a solicitor was carried on under the name of a qualified person, but under an agreement by which the solicitor was in fact the employee of another person who was unqualified to practice, and the latter attended summonses at chambers and did other professional work without the solicitor's direct authority, it was held that he was acting as a solicitor without having been admitted or qualified. Abercrombie *v.* Jordan, 8 Q. B. D. (Eng.) 187, 30 W. R. 810. To the same effect is In re Simmons, 15 Q. B. D. (Eng.) 348, 33 W. R. 706. So in a case wherein it was shown that the proceedings in a suit, such as the suing out of the writ, declaration, etc., were taken under the name of Davis and Plasted, and that their names were on all the papers and notices in the cause, it was held that the defendant Davis had held himself out as an attorney in the cause and was liable to the penalty for practicing as an attorney without having entered his certificate, although it was shown by the terms of the partnership that Plasted was to have to himself all the profits of the business arising from his own connection, that the

action in question was prosecuted by him for his own benefit only, and that the defendant derived no advantage from it whatever. Edmondson *v.* Davis, 4 Esp. (Eng.) 14. A suspended attorney can not procure the issuance of process on behalf of a principal. Cobb *v.* Judge, 43 Mich. 289 (5 N. W. 309); Paul *v.* Purcell, 1 Browne (Pa.), 348. Any advice given to clients, or action taken for them, in matters connected with the law, is practicing law; and therefore it is practicing law to give advice as to the rights of a person admitted to the chain-gang for a failure to pay a fine, and to undertake to procure the acceptance of the fine and the release of such person. In re Duncan, 83 S. C. 186 (65 S. E. 210, 24 L. R. A. (N. S.) 750, 18 Ann. Cas. 657). In that case the Supreme Court of South Carolina said: "It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings . . on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients, and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law." The decision in the case just cited was followed in Re Pace, 170 App. Div. 818, 824 (156 N. Y. Supp. 641). The New York court fully adopted and approved the definition of what constitutes the practice of law as laid down by the Supreme Court of South Carolina. "The practice of law, as that term is now commonly used, embraces much more than the conduct of litigation. The greater, more responsible, and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Besides these employments, mere skill in trying lawsuits, where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of the lawyer's work." People *v.* Title Guaranty &c. Co., 180 App. Div. 648 (168 N. Y. Supp. 278).

It is common knowledge that a large, if not the greater, part of the work of the bar to-day is out of court, or office work. People

*v.* Alfani, 227 N. Y. 334 (125 N. E. 671). The drafting and supervising of the execution of wills has been held to constitute practicing law. People *v.* People's Trust Co., 180 App. Div. 494 (167 N. Y. Supp. 767). So it has been held that a collection agency which undertakes to furnish legal services where they may be necessary is engaged in the practice of law. In re Co-Operative Law Co., 198 N. Y. 479 (92 N. E. 15, 32 L. R. A. (N. S.) 55, 139 Am. St. R. 839, 19 Ann. Cas. 879). The practice of law involves not only appearance in court in connection with litigation, but also services rendered out of court. "In litigated matters it involves not only the actual representation of a client in court, but also services rendered in advising the client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge." In People *v.* Stock Yards Bank, 344 Ill. 462 (176 N. E. 901), the following definition of practicing law was approved. "Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm, or corporation, when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill." The practice of law is not limited to the conduct of cases in court, but embraces the preparation of pleadings and other legal papers and conveyances, and the giving of advice in matters connected with the law, and includes representing a creditor in bankruptcy proceedings, or in the collection of a claim against one who has made a general assignment for the benefit of creditors. Meisel *v.* National. Jewelers' Board of Trade, 152 N. Y. Supp. 913 (90 Misc. 19). The definition of what constitutes the practice of law as laid down by the Supreme Court of South Carolina in Re Duncan, supra, was approved and followed in Barr *v.* Cardell, 173 Iowa, 18 (155 N. W. 312).

So we are of the opinion that the practice of law, at the time the application for charter in this case was made, was not confined to practice in the courts of this State, but was of larger scope, including the preparation of pleadings and other papers incident to any action or special proceeding in any court or other judicial body, conveyancing, the preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opin-

ions as to the validity or invalidity of the title to real or personal property, the giving of any legal advice, and any action taken for others in any matter connected with the law. The application for charter with which we are dealing was made under the Civil Code, § 2823, and under that section the court is without authority to grant the charter, unless it is "satisfied that the application is legitimately within the purview and intention of this Code." Clearly this application was not legitimately within the purview and intention of the Code, or of any other law which was of force at the time this charter was applied for. By no stretch of the imagination can it be held that it was the intent and purpose of the framers of the law embraced in this section to authorize thereunder the grant of charters to corporations to practice law.

■ Are the superior courts of this State clothed with authority and jurisdiction, under the Civil Code, § 2823, to grant charters which authorize corporations to practice law in this State? Those persons who were regularly licensed under the laws of this State before the adoption of the Code, and those who thereafter have been licnsed in the manner prescribed by law, are entitled to practice law in the courts of this State. Civil Code (1910), § 4930. Any citizen, male or female, of good moral character, who has read law and undergone a satisfactory examination, as provided by law, is entitled to plead and practice law in this State. § 4932; Acts 1916, p. 76. Aliens, who have been two years resident in this State, and declared their intention to bcome citizens, pursuant to the act of Congress, are eligible to admission as attorneys at law. § 4933. Each person desiring to become a member of the bar of this State shall make a written application to a judge of any superior court, accompanying the application with a certificate from two practicing members of the bar of this State as to his moral character. § 4934. The applicant must be examined touching his knowledge of the principles of the common and statute law in England of force in this State, of the law of pleading and evidence, of the principles of equity and equity pleading and practice, and of the revised Code of this State, the constitution of the United States and of this State, and of the rules of practice in the superior courts. § 4935. Every applicant, except as provided in section 4942, shall submit to examination in writing, which shall be prepared by the board of examiners, covering all

the topics and subjects a knowledge of which is, under the laws, requisite to admission to the bar. This board shall pass upon the merits of each examination, and determine whether the applicant is or is not qualified to plead and practice in the several courts of this State, other than the Supreme Court. § 4940. No person shall be admitted to the practice of law in this State except under the examination by the board of examiners as hereinbefore stated. § 4942. Before admission to the bar each applicant must take an oath that he will justly and uprightly demean himself according to the laws, as an attorney, counselor, and solicitor, and that he will support and defend the constitution of the United States and the constitution of this State. § 4945.

Any person who does not comply with the foregoing requirements and does not take the oath required can not be licensed to practice law in this State. It is manifest from these provisions of the law that no corporation can be licensed to practice law in this State. No corporation can comply with the requirements which are imposed upon applicants as prerequisites to enable them to obtain license to practice law. This proposition is sustained by the great weight, if not by all, the decisions of the courts of the other States in this country. These decisions deny the eligibility of corporations to practice law. Ruling Case Law states the proposition thus: "Since, as has been seen, the practice of law is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts, and as these conditions can not be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in." 2 R. C. L. 946, § 13. As a corporation can not perform the conditions which are requisite to acquire a license to practice law, "it follows that the practice of law is not a lawful business for a corporation to engage in." 6 C. J. 569 (§ 11) B; 14A C. J. 296 (§ 2145). In Re Co-Operative Law Co., supra, the New York Court of Appeals held that "A corporation for the practice of law is not authorized by a statute permitting the organization of a corporation for any lawful business, since the practice of law is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts; and a corporation can not perform the conditions." The court in that case said: "The

right to practice law is in the nature of a franchise from the State, conferred only for merit. It can not be assigned or inherited; it must be earned by hard study and good conduct. . . No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt for violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions can not be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it can not practice law directly, it can not indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate." The court further said: "The bar, which is an institution of the highest usefulness and standing, would be degraded if even the humblest member became subject to the orders of a money-making corporation engaged, not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the State. A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it, any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it." In Re Pace, supra, it was held that "It is unlawful for a corporation, whether domestic or foreign, to practice law in this State, and any member of our bar who assists a corporation in violating the law in this respect is himself guilty of wrong-doing." It is true that in the case just cited there was a statute making it unlawful for any corporation to practice as an attorney at law; but the court said "Quite apart from the statute, it is, and was before the statute, against public policy and also *malum in se* for a corporation to practice law."

Corporations, being artificial persons, can not practice law. New Jersey Photo Eng. Co. *v.* Schonert, 95 N. J. Eq. 12 (122 Atl. 307); Black & White Operating Co. Inc. *v.* Grosbart, 107 N. J. L. 63 (151 Atl. 630). In People *v.* California Protective Cor., 76 Cal. App. 354 (244 Pac. 1089), it was held that a corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it, notwithstanding members forming it are authorized to practice law, and although the Civil Code, § 286,

permits formation of corporations for any purpose for which individuals may lawfully associate themselves. In People *v.* Merchants' Protective Cor., 189 Cal. 531 (209 Pac. 363), it was held that a statute of California, providing that private corporations may be formed for any purposes for which individuals may lawfully associate themselves, does not authorize the organization of a corporation to practice law, as individuals can not so practice law without a special license. A corporation can not itself practice law, nor can it lawfully do so by hiring an attorney to conduct a general law practice for others for pay, where the fees earned are to be and are received as income and profit by the corporation. In Re Otterness, 181 Minn. 254 (232 N. W. 318, 73 A. L. R. 1319). In Re Eastern Idaho Loan & Trust Co., 49 Idaho, 280 (288 Pac. 157, 73 A. L. R. 1323), it was decided that a corporation could not perform any act which amounted to the practice of law, under a statute which prohibited any person from practicing law or holding himself out as qualified to practice law in that State without having been admitted to practice therein by the Supreme Court and without having paid all license fees prescribed by law. In State ex rel. Lundin *v.* Merchants' Protective Cor., 105 Wash. 12 (177 Pac. 694), it was held that "The right to practice law attaches to the individual and dies with him. It can not be made the subject of business to be sheltered under the cloak of a corporation having marketable shares descendible under the laws of inheritance."

The next question for decision is whether the applicants seek a charter which will confer upon the corporation thereby created the power to practice law. A most cursory inspection of this application for charter discloses that its purpose is to confer upon the corporation powers which constitute the practice of law. If granted, the charter will permit the corporation to render legal advice on all matters on questions of law; render opinions as to the validity or invalidity of titles to property; prepare and furnish its customers briefs on any and all questions of law; act as an attorney in fact for the settlement and adjustment of any and all claims; act as an attorney in fact for customers in procuring competent attorneys at law to represent such customers in any court or before any judicial body in this State in any contested or uncontested case or matter pending before such court or body,

when an attorney at law is necessary; prepare pleadings; prepare any will, trust agreement, deed, conveyance or other legal instrument whereby rights or property are conveyed or secured; and furnish legal advice or legal services in connection with matters pertaining to the law. All these powers are such as are exercised in the practice of law, and will authorize the corporation, if it is chartered, to practice law. There was, at the time this application was filed, no law in this State which authorized the grant of a charter which would confer these powers and the right to practice law upon a corporation. We more readily reach this conclusion in view of the momentous importance of the question. Permitting corporations to practice law, without any of the restraints imposed upon individuals, who would not be licensed to practice law in or out of the courts unless they possessed good moral character and the necessary legal learning, will tend to commercialize, degrade, and prostitute the noble profession of the law.

■ We are not called upon to determine whether the proviso and prohibitions in section 2 of the act of August 7, 1931, which defines the practice of law, confer upon corporations, voluntary associations, or individuals the power to practice law in any of its branches, and, if they do, to determine whether so much of said act as authorizes them to practice law in the respects mentioned in said proviso and prohibitions is unconstitutional because violative of the provision of the constitution of this State which confers upon the courts judicial power; for the reason that the application for the charter involved in this case was filed prior to the passage of that act. On this subject see In re Day, 181 Ill. 73 (54 N. E. 646, 50 L. R. A. 519); Ex Parte Secombe, 60 U. S. 9 (15 L. ed. 565); People v. Stock Yards Bank, supra; Brydonjack v. State Bar of California, 208 Cal. 439 (281 Pac. 1018, 66 A. L. R. 1507, note, and cit.) Separation of the legislative, judicial, and executive powers, par. 23 of sec. 1 of art. 1 of the constitution of this State; Judicial power of the courts, par. 1 of sec. 1 of art. 6 of the constitution of this State.

■ Applying the principles set out in the first five divisions of this opinion, we think that the trial judge erred in refusing to grant the interlocutory injunction prayed for.

*Judgment reversed. All the Justices concur, except Atkinson and Hill, JJ., who dissent.*

BECK, P. J. concurring specially. There are many broad rulings made in the opinion of the majority in which I can not concur; but I concur in the judgment of the court which holds that the court below erred in refusing to grant the interlocutory injunction.

ATKINSON and HILL, JJ., dissenting. This case arose before passage of the act approved August 7, 1931 (Ga. L. 1931, p. 191). Under the principles announced in *Atlanta Title & Trust Co.* v. *Boykin,* 172 *Ga.* 437, the trial judge did not err in refusing an interlocutory injunction.