GAZAN *v.* HEERY.

No. 11238. July 3, 1936.

34

*Jacob Gazan,* for plaintiff.

*Archibald B. Lovett* and *Shelby Myrick,* for defendant.

RUSSELL, Chief Justice. The petition filed as an information in the nature of a quo warranto is based on the allegation that the respondent is ineligible to hold the office of chief judge of the municipal court of Savannah, because of the qualification imposed by the act of August 13, 1915 (Ga. L. 1915, p. 124), that "the chief judge of said court must have practiced law for five years or more." The plaintiff, who is properly recognized as an eminent member of the Georgia bar, has cited numerous authorities from the Su-

preme Court of the United States, from the Supreme Court of this State, and from text-books, in support of the general rule, that unless an ambiguity appears in a statute there is no room for construction, and that it is the duty of a court to give to the language employed in a statute its usual and ordinarily accepted meaning. It is learnedly argued that the requirement that the chief judge of said court must have practiced law for five years or more "is strictly confined to practice as an attorney at law in the courts and at the bar for five years or more."

What is meant by the "practice of law" as applied to fitness for the exercise of judicial functions? So far as we are aware, no precise definition of the term "practice of law" has been made by this court, except that it was said in *Boykin* v. *Hopkins,* 174 *Ga.* 511, 512 (162 S. E. 796), that "The practice of law, as that term is commonly used, embraces much more than the conduct of litigation. The greater, more responsible, and delicate part of a lawyer's work is in other directions. Practicing law, according to the laws and customs of courts, is the giving of advice or rendition of any sort of service when the giving of such advice or rendition of such service requires the use of legal knowledge or skill." In delivering the opinion of the majority of the court Mr. Justice Hines said: "As we have undertaken to show, no statute was passed in this State, which undertook to define the practice of law, prior to the above act of August 7, 1931; and to determine what constituted the practice of law prior to the passage of that act we must look to the general law of force in this State at that time. In *Bird* v. *Breedlove,* 24 *Ga.* 623, this court held that there was no law in this State which restricted to attorneys at law the business of attending to applications for pardons. . . In that case this court did not undertake to define what constituted the practice of law. We shall now undertake to do so. The practice of law is not limited to the conduct of cases in court. State *v.* Richardson, 125 La. 644 (51 So. 673). 'In a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts, by which legal rights are secured, although such matter may or may not be depending in a court.' 49 C. J. 1313 (§ 5) 4; Eley *v.* Miller, 7 Ind. App. 529 (34 N. E. 836). So where the business of a solicitor was carried on under the name of a qualified person, but under an agreement by which the solicitor was in fact

the employee of another person who was unqualified to practice, and the latter attended summonses at chambers and did other professional work without the solicitor's direct authority, it was held that he was acting as a solicitor without having been admitted or qualified. Abercrombie v. Jordan, 8 Q. B. D. (Eng.) 187, 30 W. R. 810. To the same effect is In re Simmons, 15 Q. B. D. (Eng.) 348, 33 W. R. 706. So in a case wherein it was shown that the proceedings in a suit, such as the suing out of the writ, declaration, etc., were taken under the name of Davis and Plasted, and that their names were on all the papers and notices in the cause, it was held that the defendant Davis had held himself out as an attorney in the cause and was liable to the penalty for practicing as an attorney without having entered his certificate, although it was shown by the terms of the partnership that Plasted was to have to himself all the profits of the business arising from his own connection, that the action in question was prosecuted by him for his own benefit only, and that the defendant derived no advantage from it whatever. Edmondson v. Davis, 4 Esp. (Eng.) 14. A suspended attorney can not procure the issuance of process on behalf of a principal. Cobb v. Judge, 43 Mich. 289 (5 N. W. 309); Paul v. Purcell, 1 Browne (Pa.), 348. Any advice given to clients, or action taken for them, in matters connected with the law, is practicing law; and therefore it is practicing law to give advice as to the rights of a person admitted to the chain-gang for a failure to pay a fine, and to undertake to procure the acceptance of the fine and the release of such person. In re Duncan, 83 S. C. 186 (65 S. E. 210, 24 L. R. A. (N. S.) 750, 18 Ann. Cas. 657). In that case the Supreme Court of South Carolina said: 'It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings . . on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients, and all action taken for them in matters connected with the law.'" The decision in the case just cited was followed In re Pace, 170 App. Div. 818, 824 (156 N. Y. Supp. 641). The New York court fully adopted and approved the definition of what constitutes the prac-

tice of law as laid down by the Supreme Court of South Carolina. "The practice of law, as the term is now commonly used, embraces much more than the conduct of litigation. The greater, more responsible, and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Besides these employments, mere skill in trying lawsuits, where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of the lawyer's work." People v. Title Guaranty &c. Co., 180 App. Div. 648 (168 N. Y. Supp. 278). "It is common knowledge that a large, if not the greater, part of the work of the bar today is out of court, or office work. People v. Alfani, 227 N. Y. 334 (125 N. E. 671). The drafting and supervising of the execution of wills has been held to constitute practicing law. People v. People's Trust Co., 180 App. Div. 494 (167 N. Y. Supp. 767). So it has been held that a collection agency which undertakes to furnish legal services where they may be necessary is engaged in the practice of law. In re Co-Operative Law Co., 198 N. Y. 479 (92 N. E. 15, 32 L. R. A. (N. S.) 55, 139 Am. St. R. 839, 19 Ann. Cas. 879). The practice of law involves not only appearance in court in connection with litigation, but also services rendered out of court. 'In litigated matters it involves not only the actual representation of a client in court, but also services rendered in advising the client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge.' In People v. Stock Yards Bank, 344 Ill. 462 (176 N. E. 901), the following definition of practicing law was approved: 'Practicing as an attorney or counselor at law, according to the laws and customs of our courts, is the giving of advice or rendition of any sort of service by any person, firm, or corporation, when the giving of such advice or rendition of such service requires the use of any degree of legal knowledge or skill.' . . So we are of the opinion that the practice of law, at the time the application for charter in this case was made, was not confined to practice in the courts of this State, but was of larger scope, including the preparation of pleadings and other papers incident to any action or special proceeding in any court or other judicial body, conveyancing, the

preparation of all legal instruments of all kinds whereby a legal right is secured, the rendering of opinions as to the validity or invalidity of the title to real or personal property, the giving of any legal advice, and any action taken for others in any matter connected with the law."

What is now ruled in the case at bar is not in conflict with the holding of this court in *Atlanta Title & Trust Co.* v. *Boykin*, 172 *Ga.* 437 (157 S. E. 455), for the reason that that decision dealt only with the restrictions upon persons engaging in such practice (referring to the practice of law in the courts of this State), and held that such restrictions do not prohibit a private corporation organized under the laws of this State, and exercising as a business the general powers of a trust company, from examining, certifying, and guaranteeing titles to real estate under authority conferred by its charter, and, under further charter power, to prepare any and all papers in connection with conveyance of real and/or personal property that it may be requested to prepare by a customer. The question involved in the adjudication now before us is whether the requirement that "the chief judge of the municipal court of Savannah must have practiced law for five years" is confined to and restricted within active practice before the courts and at the bar, or whether he may not have "practiced law," after having been lawfully admitted to the bar as defined in *Boykin* v. *Hopkins*, supra, for more than five years without the collection of fees. Learned counsel for the plaintiff stand strongly by the general rule that the use of plain, unequivocal language in a legislative enactment not only obviates judicial construction, but indeed forbids an interpretation of the meaning of the words employed by the General Assembly.

In *Board of Tax Assessors* v. *Catledge*, 173 *Ga.* 656 (160 S. E. 909), where almost the identical question of construction was before us as in the case at bar, it was held: "An exception to the general rule just stated is presented by the use of words the meaning of which in general acceptation is apparently obvious, and yet the purpose of the legislature would be defeated were the words employed construed literally. Courts may construe the language employed in the act in connection with the context, and ascertain the legislative intent as derived from the old law, the evil, and the remedy, and will not defeat the intention and purpose of the

General Assembly by giving effect to words which would render the purpose of the General Assembly in the passage of the enactment futile, unenforceable, or ineffectual. . . In the construction of a statute a court may decline to give a legislative act such construction as will attribute to the General Assembly an intention to pass an act which is not reasonable, or as will defeat the purpose of the proposed legislation. In the exercise of this power a court may avoid a portion of the enactment and preserve the remainder." In the opinion in the *Calledge* case it was said: "Section 6 of the act of 1913, construed literally, would seem to require that a taxpayer whose return has been changed in any manner (whether the change effects an increase of his assessment which would place upon him a greater burden of taxation than he has sworn he is required to pay, or whether it diminishes that burden by reason of the fact that the change made by the appraisers is smaller in amount than that at which he returned his property) be served with notice of the reduction. However, it has long been recognized in this court that the cardinal rule to be employed in the construction of a statute passed by the General Assembly is to ascertain the intention of the General Assembly in the passage of the act in question, and that a wholly unreasonable intention shall not be attributed to the General Assembly. Where an expression in a statute is couched in such language (for instance, if the verbiage is too general, vague, and indefinite to embrace all of the subject-matter included in the act) as to become meaningless, the entire act will fail of its purpose and be set aside. In many instances this rule has been applied where portions of the statute have been stricken therefrom without avoiding the entire law as passed by the General Assembly (*Winslett* v. *Case-Fowler Lumber Co.*, 173 *Ga.* 539, 160 S. E. 384) ; and under the general principle just stated we are of the opinion that the judge did not err in his construction of section 6 of the act of 1913, as applicable to the facts of this case. All law is supposed to be based upon sound reason. In construing any law, one must look to the old law, the evil, and the remedy. Prior to the passage of the act of 1913, which created this board of tax-assessors, such a body was unknown to our law. The duties prescribed for this board of tax-assessors came in as a novelty with the passage of the act. Prior to the passage of this act, the assessment of his property made by a taxpayer was accepted by the tax-

receiver in each county in the State, unless the tax-receiver himself raised the assessment. . .

"This was the condition of affairs prior to the passage of the act here involved, and at the time the General Assembly took the subject up for legislative action. What was the evil? It must be assumed that the legislature was impressed, and was of the opinion that the old law did not produce adequate revenue under the existing plan,—that the returns of taxpayers in general were unduly affected by the maxim, 'When self the wavering balance shakes, 'tis rarely right adjusted,' that under the existing plan tax-dodging was too easy, whether due to carelessness or design. Other possible evils, not necessary to be stated at this time, may have been in the mind of the General Assembly; but it is plain that evils did exist, and it was to remedy the evils, and not to place unreasonable burdens upon honest taxpayers who had returned their property, in the judgment of the board of tax-assessors, at a fair valuation. . . In this view of the case it can not be conceived to have been the intention of the General Assembly to place upon taxpayers, who had already been adjudged by the board of tax-assessors to have performed the duty required by law, the burden and expense of appearing before the board, for no purpose and without reason. . . The circumstances of this case demonstrate that the purpose of the General Assembly in the passage of this act, which was to increase and equalize taxes, would be defeated, because the effect of the service of nonproductive notices might exceed the gains which the legislature hoped to make in increasing the revenues of both the State and the counties. . . The judge was right, for the reasons we have already stated, in so construing the apparently plain verbiage of section 6 of the act of 1913 as to effectuate the intention of the General Assembly, in the light of the old law, the evil to be corrected, and the end to be attained in the proposed remedy."

Though we distinctly disavow any intention to place our decision upon the spirit of the law—for we are endeavoring to confine ourselves to the proper construction of the letter of the law creating the municipal court of Savannah considered as a whole,—still there are cases in which the following language taken from Plowden's Commentaries has been properly applicable: "It is not the words of the law, but the internal sense of it, that makes the law; and our law consists of two parts, viz., of body and soul; the letter of

the law is the body of the law, and the sense and reason of the law are the soul of the law, quia ratio legis est anima legis. And the law may be resembled to a nut, which has a shell and a kernel within; the letter of the law represents the shell, and the sense of it the kernel; and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter; and as the fruit and profit of the nut lie in the kernel and not in the shell, so the fruit and profit of the law consist in the sense more than in the letter. And it often happens, that when you know the letter, you know not the sense, for sometimes the sense is more confined than the letter, and sometimes it is more large and extensive."

The words "practice of law" may have an entirely different meaning in a statute designed to prevent the practice of law by one not qualified to do so, from that which the same expression should have in determining qualification to hold judicial office. Words may be given one meaning in one statute, and an entirely different meaning in a different statute, determinable by the character and purpose of the legislation. While a judge of the municipal court may not be engaged in the practice of law in the ordinary sense, yet he is dealing with the law, and acquiring by decision and disposition of cases in trials in his court a knowledge and experience in law which during the same period of time may enhance his qualifications more than an active practitioner at the bar during the same period. The purpose of section 6 of the statute creating the municipal court of Savannah was not to place an arbitrary and technical barrier against a person who might possess in reality the knowledge, training, experience, and soundness of judgment such as would qualify him to fill the office of chief judge of the municipal court. Words limiting the right of a person to hold office are to be given a liberal construction in favor of those seeking to hold office, in order that the public may have the benefit of choice from all those who are in fact and in law qualified. Judges all "practice" law. They do not represent clients. They do not receive fees. They do not appear at the bar. But they are in the sense of this statute engaged in the practice of law, dealing with it, studying it, applying it, passing upon pleadings, issuing process and directing that it shall be issued, controlling counsel, and applying the ethics of the profession. The only reason why he is not

practicing law in the ordinary sense is that he is not representing clients for compensation. He is doing everything else. We think we ought to construe this statute as meaning that the legislature intended to see that nobody held the office of chief judge of the municipal court of Savannah except one who possessed such learning, skill, and judgment in regard to the principles of law and its application as can be acquired during a period of five years, whether representing parties at the bar as counsel, or as a judge upon the bench. That statute certainly was never intended to prevent a man from being elevated to the office of chief judge merely because he had not had five years practice as an attorney at the bar. When the statute creating the municipal court of Savannah was enacted, the General Assembly was setting up a new court, and knew that some standard should be set; and they took the only standard they had at that time, which was whether the proposed municipal judge had practiced law at the bar. The court did not err in dismissing the information in the nature of quo warranto.

*Judgment affirmed. All the Justices concur, except*

ATKINSON and GILBERT, JJ., dissenting. The act of the General Assembly (Ga. Laws 1915, p. 124, sec. 6) creating the municipal court of Savannah provides, as shown in the majority opinion, that "the chief judge of said court must have practiced law for five years or more," and that "No such judge or chief judge shall hold any other public office of honor, trust, or profit, *or practice as an attorney or counsellor at law, but* each judge of said court shall devote his whole time and capacity, so far as public interests demand, to the duties of his particular office as prescribed by law." (Italics ours.) It is admitted that the respondent has not practiced law for the required length of time, unless the time of his service as a judge on the municipal court is included in the calculation. The language of the act is unambiguous. It is so clear that there is no need for construction. If the respondent can not practice law while a member of the bench, his services as a judge obviously can not be construed as practicing law.