CREDITORS NATIONAL CLEARING HOUSE, INCORPORATED, *vs.*
EMILIE T. BANNWART & trustee.

Suffolk. December 5, 1916. — June 29, 1917.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* Validity. *Attorney at Law.*

A corporation, organized under the laws of another State "to establish, maintain, conduct and operate an office or offices for the general practice of the law in all its branches: to advise, assist and render all legitimate services in all sorts of legal, business," made a contract in writing by which it agreed, in consideration of its receiving certain commissions and the payment of an annual assessment of $60, "to use its best efforts and discretion in the enforcement of all claims accepted by it for collection" and "provided that in place of an attorney's fee or advance for disbursement costs and expenses there will be charged an amount equal to 15% in addition to the above rates on each payment after the claim shall have been placed in the Law Department for enforcement." Across the face of this contract were stamped the words "Free legal advice." In an action

on this contract by the corporation to recover the amount of two yearly assessments alleged to be due, it was *held*, that by the true construction of the contract the plaintiff undertook to maintain a law department, through which it would give the defendant free legal advice and would perform the services of an attorney in collecting the claims committed to it by the defendant for collection when the services of an attorney were necessary, and that thereby the plaintiff held itself out "to be lawfully qualified to practise in the courts of this Commonwealth," contrary to the prohibition contained in R. L. c. 165, § 45, so that the contract was unlawful and no action could be maintained upon it for the alleged assessments.

CONTRACT, by a corporation described in the opinion, to recover the amount of two yearly fees of $60 each alleged to have been due respectively on September 10, 1913, and September 10, 1914, under a contract in writing dated September 10, 1912, which is described in the opinion. Writ in the Municipal Court of the City of Boston dated March 24, 1915.

The defendant's amended answer contained the following allegations:

"And the defendant further says that if the plaintiff proves that the defendant entered into the contract set forth in the plaintiff's declaration, then the defendant avers and will prove that the plaintiff held itself out to be lawfully qualified to practise law in the courts of this Commonwealth and held itself out or represented itself to be an attorney or counsellor at law and to receive a fee for its services acting in such capacity; but that the plaintiff contrary to said laws and public policy of the aforesaid Commonwealth of Massachusetts unlawfully and illegally engaged in the practice of law.

"That the agreement set forth in the plaintiff's declaration is an agreement whereby the plaintiff for a consideration agrees to render legal services to the defendant contrary to R. L. c. 165.

"That said agreement was illegal and void under the laws of the Commonwealth of Massachusetts and contrary to public policy."

On removal to the Superior Court the case was tried before *Keating*, J. At the close of the evidence the plaintiff asked the judge to make the following rulings:

"1. That on all the evidence the plaintiff should recover.

"2. That on the evidence the jury must find for the plaintiff on its declaration.

"3. That the contract declared on and in evidence is legal and valid.

"4. That under said contract the plaintiff does not assume to act as an attorney-at-law or to practise law.

"5. That under said contract the plaintiff does not hold itself out as an attorney-at-law or entitled to practise law.

"6. That the plaintiff in securing for collection under the contract declared on the claims of the defendant, in attempting to secure settlement of these by demand by letter and in forwarding the same to attorneys at law, whether under salary or otherwise compensated, to be by them investigated and acted upon in the attorney's discretion and judgment was not engaged in the practice of law."

"8. That the fact that under the contract declared on the plaintiff agreed and stood ready to furnish to the defendant the advice of duly qualified attorneys at law free of charge to her does not constitute the practice of law by the plaintiff.

"9. That the plaintiff did not by its contract undertake to practise law."

The judge refused to make any of these rulings, and submitted the case to the jury with other instructions, of which the material part is quoted in the opinion. The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

R. L. c. 165, § 45, is as follows: "Whoever has been so removed and continues thereafter to practise law or to receive any fee for his services as an attorney at law rendered after such removal, or who holds himself out, or who represents or advertises himself as, an attorney or counsellor at law, and whoever, not having been admitted to practise as an attorney at law in accordance with the provisions of this chapter, represents himself to be an attorney or counsellor at law, or to be lawfully qualified to practise in the courts of this Commonwealth, by means of a sign, business card, letterhead or otherwise, shall, upon a first conviction, be punished by a fine of not more than one hundred dollars or by imprisonment for not more than six months, and, upon any subsequent conviction, by a fine of not more than five hundred dollars or by imprisonment for not more than one year."

*W. H. S. Kollmyer,* for the plaintiff.

*J. B. Jacobs,* for the defendant.

LORING, J.   The plaintiff is a Rhode Island corporation chartered (*inter alia*) "to establish, maintain, conduct and operate an office or offices for the general practice of the law in all its branches: to advise, assist and render all legitimate services in all sorts of legal, business."   On September 10, 1912, it made a written agreement with the defendant.   The written agreement was made by filling out two blanks one on the face and the other on the back of the same piece of paper, the plaintiff's agreement being set forth on the face and the defendant's on the back.   By the terms of the contract set forth on the face the plaintiff agreed "to use its best efforts and discretion in the enforcement of all claims accepted by it for collection" charging as commissions percentages on collections made varying from twenty-five per cent (the percentage in case of collections amounting to $20 or less) to five per cent (the percentage in case of payments above $5,000) and different percentages on sums between the two.   After making these provisions the blank proceeds in these words: "provided that in place of an attorney's fee or advance for disbursement costs and expenses there will be charged an amount equal to 15% in addition to the above rates on each payment after the claim shall have been placed in the Law Department for enforcement."   Across the face of this blank are stamped these words: "Free legal advice." On the back of the same paper the blank setting forth the agreement of the defendant states that the subscriber will pay to the "Clearing House" the percentages or commissions stated on the face of the paper and also a yearly fee of $60.   The subscriber agrees "not to accept payments on any claim after receiving written notice that the same has been transferred to the Law Department for attention."   This blank ends with the provision that "this agreement may be terminated by notice in writing given to said Clearing House at its executive offices at least sixty days before the expiration of any yearly period."

After September 10, 1912 (when this agreement between the plaintiff and defendant was executed), the defendant placed in the plaintiff's hands several demands for collection.   Nothing was realized from them.   On March 24, 1915, it brought this action to recover from the defendant two yearly fees of $60 each on the ground that by virtue of the last clause of the agreement the contract continued in force until notice was given to terminate it.

To this action the defendant set up as a substantive defence "that the plaintiff held itself out to be lawfully qualified to practise in the courts of this Commonwealth." At the trial the judge instructed the jury that, if by the true construction of the agreement between it and the defendant (construed in the light of the way in which it conducted its business) the plaintiff maintained a law department, the affirmative defence set up in the answer was made out. But that (on the contrary), if by the true construction of that agreement the defendant agreed to procure legal advice for the defendant from attorneys not under salary from it and to put any cases which required the services of a lawyer into the hands of lawyers not under salary from it, the defence was not made out. The jury found for the defendant and the case is here on an exception taken by the plaintiff to the refusal of the judge to give nine rulings requested, on an exception taken to the charge "so far as it is inconsistent with its requests for rulings" and on exceptions taken to the admission of evidence.

We are of opinion that by the true construction of the contract here in question the plaintiff undertook to maintain a law department and through its law department (1) to give the defendant free legal advice and (2) to perform the services of an attorney in collecting the claims committed by the defendant to it for collection when the services of an attorney were necessary. That being the true construction of the agreement the plaintiff by making the agreement held itself out to be lawfully qualified to practise law in the courts of the Commonwealth.

It follows that the charge of the judge in leaving the construction of the contract to the jury was too favorable to the plaintiff.

The plaintiff has contended that it was not illegal for it to practise law and relies in that connection on *Ames* v. *Gilman*, 10 Met. 239. The defence set up was not that the contract was void because by it the plaintiff undertook to practise law but because the plaintiff held itself out "to be lawfully qualified to practise in the courts of this Commonwealth." That is to say because it held itself out to be a member of the bar. The plaintiff's further contention based upon the fact that by the true construction of its charter its right to practise law is to practise law "so far as is lawful" is answered by the same consideration.

In the view which we have taken of the case the plaintiff was

not prejudiced by the evidence admitted even if the presiding judge was wrong in admitting it.

We have examined all the cases cited by the plaintiff and find nothing in them that requires notice.

*Exceptions overruled.*