## Childs et al. v. Smeltzer

*Joseph P. Gaffney,* for plaintiffs; *Edgar W. Lank,* for defendant.
*Charles J. Hepburn, Oscar G. Bender* and *Morris B. Levitt,* amici curiæ.

DAVIS, P. J., April 18, 1933.—Plaintiffs are members of the committee of the Philadelphia Bar Association whose duty it is to investigate cases of alleged unauthorized practice of the law. The defendant holds herself out as a conveyancer and as one who prepares deeds, mortgages, bonds and other documents of legal character, but denies that she is engaged in the practice of law. The plaintiffs pray for an injunction restraining the defendant from doing such work and giving such advice as can only legally be done by a member of the bar.

The court makes the following

### Findings of fact

1. The plaintiffs in this action are attorneys and counsellors at law, and qualified members of the Philadelphia Bar in good standing. They have practiced law for a long period of time and have maintained and now maintain offices for such purpose in the City and County of Philadelphia, and have built up practices of value.

2. The Philadelphia Bar Association is a corporation of the first class composed of members of the Philadelphia Bar in good standing. It provides in its by-laws for a Committee on the Unauthorized Practice of Law, the pertinent by-law, No. 59, reading as follows:

"The Committee on Unauthorized Practice of Law shall consist of five members. It shall, in such cases as it deems proper, in the name of and on behalf of the Association, investigate complaints, submitted to it in writing, of instances of the alleged unauthorized practicing of law, and institute and prosecute quo

warranto, or other proceedings at law or equity, against persons, lay or corporate, engaged in the unauthorized practice of law."

3. The plaintiffs are members of that committee, and this suit is brought on their own behalf, as well as on behalf of the said Philadelphia Bar Association, as authorized by said by-law.

4. The defendant is not a lawyer and has not been admitted to the bar in Philadelphia County or elsewhere, and is particularly not entitled to practice law in the County of Philadelphia. She is a conveyancer, scrivener, stenographer, and notary public. She maintains her office in Room 1037 Real Estate Trust Building, southeast corner Broad and Chestnut Streets, Philadelphia.

5. The defendant has and does advertise herself as specializing in the preparation of deeds, mortgages, releases, assignments and all other legal papers.

6. These advertisements have been confined to the circularizing of real estate men and lawyers in Philadelphia.

7. She has drawn, among other papers, wills, certificates of registration under the Fictitious Names Act, partnership agreements, deeds of trust, deeds for husband and wife as tenants by entireties, deeds conveying property, mortgages, chattel mortgages, releases of mortgages, declarations of no set-off, releases of judgment, building agreements and contracts, general powers of attorney, bills of sale, builder's bond, power of attorney to satisfy mortgages, trust agreement, trade agreement, release of annuity, lease, reservation of ground rent, deed of confirmation, agreement of sale, copartnership agreement.

8. Nearly all of the above papers were drafted by the defendant on forms containing blanks which she filled out with the appropriate language, or, if she drafted a paper such as a will, which was most exceptional, she drafted it from a form book.

9. All of the papers so drafted were comparatively simple, and the greater part of the work done by the defendant in the line of drafting papers was that which would be performed by the ordinary conveyancer.

10. In drafting the papers the defendant sometimes typewrote an instrument brought to her already written out, but usually drafted it from the information given her by attorneys and conveyancers, in some instances using her own phraseology.

11. The net receipts of the defendant for the year 1928 were approximately $4500; for the year 1929, $3600; for the year 1932 so far, $2000. These figures include notary fees to the extent of $500 or $600.

### Discussion

The plaintiffs are attorneys and counsellors at law and qualified members of the Philadelphia Bar in good standing. The Philadelphia Bar Association is a corporation of the first class composed of members of the Philadelphia Bar.

No. 59 of the by-laws adopted by the association provides:

"The Committee on Unauthorized Practice of Law shall consist of five members. It shall, in such cases as it deems proper, in the name of and on behalf of the Association, investigate complaints, submitted to it in writing, of instances of the alleged unauthorized practicing of law, and institute and prosecute quo warranto, or other proceedings at law or equity, against persons, lay or corporate, engaged in the unauthorized practice of law."

The plaintiffs are members of that committee. The defendant is not a member of the bar of this or any other county. She is a stenographer and notary public, and maintains an office in the City of Philadelphia. The defendant advertises that she specializes in the preparation of deeds, mortgages, releases, assignments and other legal papers. It appears from the testimony that she

has drawn many wills, certificates of registration under the Fictitious Names Act, partnership agreements, deeds of trust, deeds for husbands and wives as tenants by entireties, deeds conveying property, and mortgages; in fact, legal documents of every description.

The plaintiff's bill asks that the defendant be restrained by injunction from practicing as an attorney or counsellor at law, rendering service as a qualified member of the bar, advertising that she is competent to draw legal papers and give advice concerning the legal rights of persons, and charging a fee for such advice and the preparation of the documents referred to.

Plaintiffs contend the question to be determined is, what is the practice of the law, and, if the defendant's acts constituted a practice of the law, the contention of the plaintiffs is that such acts can be enjoined. In support of this proposition the plaintiffs' brief sets forth a number of adjudicated cases outside of this jurisdiction involving the same question. The decisions are extremely broad. We cite a few of them:

"It is too obvious for discussion that the practice of law is not limited to the conduct of cases in courts. According to the generally understood definition of the practice of law in this country, it embraces the preparation of pleadings and other papers incident to actions and special proceedings . . . . on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instruments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law. An attorney at law is one who engages in any of these branches of the practice of law:" In re Duncan, 83 S. C. 186, 65 S. E. 210, 24 L. R. A. N. S. 750; In re Pace et al., 170 App. Div. (N. Y.) 818, 824, 156 N. Y. Supp. 641; Barr v. Cardell, 173 Iowa 18, 155 N. W. 312; The People ex rel. v. Peoples Stock Yards Bank, 344 Ill. 462, 176 N. E. 901 (1931) ; Boykin, Solicitor General, v. Hopkins, 174 Ga. 511, 518, 162 S. E. 796 (1932) ; Berk v. State ex rel., 225 Ala. 324, 142 So. 832, 835 (1932).

"The practice of the law, as the term is now commonly used, embraces much more than the conduct of litigation. The greater, more responsible, and delicate part of a lawyer's work is in other directions. Drafting instruments creating trusts, formulating contracts, drawing wills and negotiations, all require legal knowledge and power of adaptation of the highest order. Beside these employments, mere skill in trying lawsuits, where ready wit and natural resources often prevail against profound knowledge of the law, is a relatively unimportant part of the lawyer's work:" People v. Title Guarantee & Trust Co., 180 App. Div. 648, 650, 168 N. Y. Supp. 278 (1917).

"Where the rendering of such services involves the use of legal knowledge or skill, or where legal advice is required and is availed of or rendered in connection with such transactions, this is sufficient to characterize the services as practicing law. . . .

"Where a will, contract or other instrument is to be shaped from facts and conditions, the legal effect of which must be carefully determined by a mind trained in the existing laws in order to insure a specific result and guard against others, more than the knowledge of the layman is required, and a charge for such service brings it definitely within the term 'practice of law:' " The People ex rel. v. Peoples Stock Yards State Bank, 344 Ill. 462, 477, 176 N. E. 901 (1931).

And the following quotation from Corpus Juris:

"Practice of Law. As generally understood, the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter

may or may not be depending in a court:" 49 C. J. 1313, Sec. 5, and cases there cited.

Numerous other decisions were cited, all substantially to the same effect, but we do not discuss them, as we base our decision on a somewhat different ground.

We have, however, examined all the decisions cited in the plaintiffs' brief. They are in all but one or two instances based upon acts of assembly which prohibit the "practice of law," and, consequently, we do not think that they are entirely applicable to Pennsylvania, where the statute, as we shall subsequently point out, is different.

The cases in Illinois seem to be the strongest cases cited on behalf of the plaintiffs' contention, but we do not believe that we should go as far as the decisions go in that state.

Taking the language of all of the decisions cited at its full value, it would appear that the defendant had been engaged in the practice of the law. But the line is difficult to define. Is it practicing law where the defendant fills out an ordinary printed form of deed, putting in the blanks the names of the grantor or grantee, the consideration, a description of the property, whether or not subject to mortgage, from whom acquired, possibly an allusion to a simple easement, such as the right of way in an alley, which allusion may have been copied from preceding deeds, and follows it with the insertion of the few words required in the subsequent clauses of the deed? And would it be practicing law if the same thing were done with a blank form of mortgage, or the filling out of a power of attorney, or if an assignment were copied from a book of forms, or a release copied from a similar source?

It is quite certain that a great deal of this work has been done for years in Philadelphia County by conveyancers, and in times past, before the advent of trust companies, was done by them more largely. In fact, this special form of legal practice, which involved the draft of nearly all the papers which the defendant drafted here, was done at that time by conveyancers, who were not members of the bar and not supposed, except incidentally, to have any legal knowledge. They did not hold themselves out to the public as lawyers, but held themselves out to the public as people who could draft the instruments necessary to the conveyancing business and other cognate instruments.

There has grown up in Philadelphia, and, we think, largely throughout the State of Pennsylvania, and in most other communities, a large body of people who performed these relatively simple functions, and, when they were required to give more complicated clauses in a mortgage, or a deed, or a power of attorney, or some other similar instrument, consulted a lawyer as to the phraseology of these clauses and as to their possible legal effect. Most of this business has now been absorbed by the trust companies, many of whose officials and employes are members of the bar and who perform legal functions and draft legal instruments of a very complex character. Those drafted by the defendant were relatively simple, nor do we suppose that any serious legal complication could have arisen in connection with their preparation. They were practically the instruments drawn by the oldtime conveyancer, and probably even of simpler character than those.

It is obvious that no line can be drawn in the drafting of instruments of this type at which it may be said that the individual drafting them is practicing law and at which he ceases to practice law. We have already cited several instances which scarcely seem to come within the category of law practice, such as filling in the blanks in a printed form of deed or mortgage. Yet, even here some superficial legal knowledge is necessary, and, it is probable, equally so in the filling in of the blanks of the simplest lease. But as we go higher in the scale and the

operations become more complex, we can speedily reach a point where some expert legal knowledge beyond the information of the ordinary layman would be required. But this might be equally true with the ordinary contract drawn up between two individuals. Many individuals draft these contracts themselves. But if they refused to draft these contracts themselves and went to somebody whose intelligence they regarded as superior, but who was not a lawyer, and asked him to draft, and paid him for the drafting of such a contract, would he be practicing law? He might give them very bad advice and his contract might, as between them, be valueless, but they would know with whom they were dealing and it would be perfectly permissible for them to select a layman for this purpose if they desired a layman's advice, and it seems to us that it would be equally permissible for the layman to receive compensation for services so rendered.

The purpose of establishing a profession learned in the law and surrounding it with safeguards, such as careful examinations for entrance, admission to the courts only after certain formalities have been fulfilled, and supervision of its conduct by boards of censors and the judiciary, is to hold out to the public a protection, so that the public, if it desires, may go and receive the benefit of expert knowledge, and these safeguards assure the public that it is dealing with a profession with high attainments, honor and standing, and a profession of experts in legal knowledge. But all of these safeguards are placed there so that the public may not be deceived, and this does not mean that the public may not consult other people on legal questions, though the people so consulted may not be members of the bar. This is equally true of the medical profession. The State provides an elaborate machinery for admission to the medical profession and issues diplomas and licenses to practice. This again is for the purpose of protecting the public, so that if they commit their health to the hands of irresponsible individuals they do so at their own risk, and if, instead of taking the benefit of the treatment of licensed physicians, they go to other practitioners who profess cures by occult or superstitious means, they do so with a full understanding that these are not licensed practitioners. There are, for example, many Christian Scientists who go to Christian Science healers, with the full knowledge that such healers are not licensed medical practitioners possessing degrees from medical colleges. But so long as the Christian Science healer does not hold himself out to be a physician entitled to practice medicine, as the licensed graduate physician possessing a degree is entitled, the Christian Science healer violates no law and is permitted to continue his work.

The only distinction, it seems, which would be a valid distinction and an enforceable distinction, is a distinction which makes actionable or enjoinable the holding out of oneself to be a lawyer or one practicing law, or as one who has equal qualifications with the practicing lawyer.

The Act of Assembly of April 17, 1913, P. L. 80, Sec. 1, of this State, amending section one of the Act of April 28, 1899, P. L. 117, provides as follows:

"From and after the passage of this act, it shall not be lawful for any person in any county in the State of Pennsylvania to hold himself out to the public as being entitled to practice law, or use or advertise the title of lawyer, attorney-at-law, attorney and counsellor-at-law, counsellor, or the equivalent in any language, in such manner as to convey the impression that he is a practitioner of the law of this or any other State, nation, country, or land; or in any manner to advertise that he, either alone or together with another person, or persons, has, owns, conducts, or maintains a law office, or law and collection office of any kind, for the practice of the law of this or any other State, nation, country or

land; without having first been duly and regularly admitted to practice law in a court of record of any county in this Commonwealth."

Violation of this act is made a criminal offense, punishable by fine and imprisonment. This act is directed against the holding out to the public as being entitled to practice law without being regularly admitted to such practice by a court of record, and was passed, doubtless, for the purpose of protecting the public against the quack who professes an experience and knowledge and a training which he does not actually possess.

The legislature had previously, by the Act of April 14, 1834, P. L. 333, Sec. 68, given the judges of the courts of record of the Commonwealth power to admit "a competent number of persons of an honest disposition, and learned in the law, to practice as attorneys in their respective courts," and also, in section sixty-nine of the same act, provided for an oath to be taken on admission defining his duty as an attorney and swearing that he would observe it. But it was certainly not the intention of the legislature, nor could it have been within the power of the courts, to encroach on functions long exercised by others side by side with those who practice law and to engross to the profession of the law occupations or parts of occupations which had hitherto been performed by others. And it was not until 1899 that the act which was amended by the Act of 1913 above quoted was passed.

It would seem a fair thing to hold that performance of services, though they may in part be of a legal nature, is not necessarily practicing law unless, in violation of the Act of 1913, a person performing such services holds himself out to the public as a lawyer or as entitled to practice law or in some way deceives the public or his clients as to his status. The object of segregating, as it were, the legal profession, making it difficult of entrance, and purging it of members who fail to conduct themselves by proper ethical standards, was, as we have already stated, merely to assure the public that here was a body of men to any one of whom they could confidently turn for legal advice and assistance. It seems that the only actions by outsiders which would be seriously detrimental to such a body, supposing that its pretentions were genuine, would be that which might be exercised by fraudulent pretenders who professed to be of that body when actually they were not. Has the defendant in this case violated any such rule or principle? We think in some respects that she has if she has held herself out to the public as being able to prepare all manner of legal documents.

It might fairly be said that a holding out as a lawyer took place if anyone should announce that he was prepared to advise on all legal questions. He would certainly be assuming that he had the qualifications of a lawyer; the qualifications secured by an equal amount of labor and toil which admission to the bar would require of a student of the law, and if he drew papers for clients whom he had obtained by such holding out, which were legal in their nature or which required legal knowledge to draft them, we think he might very properly be accused of having stated to the public that he was as fully qualified to do this as a member of the bar. If, however, he has stated in his advertisement or in his holding out that he was drafting such papers merely as a conveyancer and with whatever knowledge a conveyancer might possess, we think the situation would take a different aspect. Everyone who dealt with him under such circumstances would understand his position in the same manner as a person dealing with a person not licensed as a physician understands he is not dealing with a duly licensed physician but with a person whose methods of cure and whose training are entirely different. If the person dealing with the individual chose to go to a conveyancer in preference to a lawyer because he felt that the

fee might be less, or because he felt that the paper was not of sufficient importance or complexity to warrant a lawyer's intervention, the individual who goes to the conveyancer under those circumstances is certainly not deceived, nor does the conveyancer hold himself out to be anything other than what he really is. It is even possible that at the interview certain incidental advice may be given which might more properly come from a lawyer, but we cannot think that there is anything objectionable in such a proceeding unless it is to be concluded as a legal proposition that no one can perform for hire any function which has a legal aspect.

The distinction between practicing law and holding oneself out as a practicing lawyer, or as one competent to practice law, is adverted to in the case of Creditors National Clearing House, Inc., *v.* Bannwart, 227 Mass. 579, 116 N. E. 886.

It appears that the defendant in the instant case advertised that she prepared deeds, mortgages, releases, assignments and all other legal papers. This is a very broad statement and would seem to indicate that the defendant was holding herself out as competent to prepare any legal document whatsoever. The deeds might be trust deeds, the mortgages might be corporation mortgages, the releases and assignments might be highly complicated. Unquestionably, one reading this advertisement would conclude that the person advertising was a person learned in the law and assume that she was as competent as any lawyer to draft the papers described. In so far as this is concerned, she should be enjoined, and her advertisement should state that she is a scrivener and conveyancer, and nothing more. All advertisements which she issues which intimate that she does legal work should be enjoined, as the tendency of such an advertisement is to give the impression to the public that she is by training competent to do such work, and consequently is either a member of the bar or has equal qualifications. It is true that the line even here is difficult to observe, but we consider the observation of it far less difficult than any other division of activities and also in conformity with what we believe to be the law of this state. The defendant has drawn up, as appears from the findings of fact, a number of documents, some of which might be extremely complex. In the particular instances they were not. What is the important thing is whether those dealing with the plaintiff dealt with her under the belief, fostered and encouraged by herself, that she was either actually a lawyer or one learned in the law, or one having qualifications equal to the qualifications of a practicing member of the bar. If she advertised that she drew up all legal documents she was, unquestionably, holding herself out to the public as a person of legal attainments sufficient for this purpose and as having a legal training which would justify this assumption. We are of the opinion that she is in error and should be enjoined. We see no reason, however, why it is not proper for her to continue her business as a scrivener and conveyancer without holding herself out to the public as having legal competence.

An objection has been raised to this view of the case by counsel for the plaintiffs, to the effect that if it were permissible for any layman to draw any of the papers which the defendant drew, even though the persons dealing with him understood that they were dealing with a scrivener or conveyancer and not a lawyer, it would be possible for one who had been disbarred to undertake this sort of practice, and so do work that had a legal character after having been expelled from the legal profession. This difficulty, we agree, might occasionally arise, but inasmuch as such person would have been disbarred by the courts from practicing law, he would be in a position different from that occupied by the defendant. He would actually be engaged in the unauthorized prac-

tice of the law, for whatever authority had been given to him to practice law had been revoked by the court and his attempt to perform any legal service for hire would be in violation of such order, and, consequently, contempt of court. No such order has been made against the defendant here, and, in the view that we take of the situation, she violates no law or statute if she undertakes as a scrivener or typist or conveyancer to prepare papers such as have been described, provided she does not advertise or hold herself out to the public as competent to perform legal services, or as being on a par with the legal profession in such competency. One who has been disbarred occupies an entirely different position. He is forbidden from the practice of law, and if he attempts to perform services which are legal in their nature he is violating the order of the court and, as has been said, is in contempt. If such a rule could not be laid down it would mean that the business of conveyancing, in so far as it refers to drafting of leases, deeds, mortgages, assignments and other instruments necessary for the carrying on of the business, would be entirely extinguished in this state. The conveyancer would be obliged to call in a lawyer in nearly every step of the proceeding for the purpose of drafting the papers, the drafting of some of which is extremely simple, and we do not believe that the legislature or the courts have intended to impose such a drastic curtailment on a well-established business. The disbarred lawyer cannot do this as he has been expelled from his profession by order of the court and any practice of it by him of whatsoever nature is a violation of that order.

The distinction here set forth seems to have been observed in the case of In re Duncan, 83 S. C. 186, 65 S. E. 210, cited in plaintiff's brief. In that case Duncan had been disbarred and was asked by a woman to secure a pardon for her son, who was then serving sentence for an offense. Duncan performed the service and accepted a fee therefor. It was held by the court that he was practicing law in violation of the order of disbarment and, therefore, in contempt of court, but the court also observed that another person, not a lawyer, might have performed the same service with propriety.

The court makes the following

### Conclusions of law.

1. The defendant's act in holding herself out as competent to draw all legal papers was a holding out in violation of the law of Pennsylvania.

2. The defendant should be enjoined from holding herself out as competent to draft legal papers otherwise than as a conveyancer, scrivener, stenographer or notary public and as one qualified to fulfill the functions appropriate to these occupations.

3. The defendant should be permitted to carry on such conveyancing, stenographic or notarial work as is authorized by law, provided such work is done without any holding out by the defendant of herself as one who is competent to render legal service or services such as come within the province of one admitted to the Bar of the State of Pennsylvania and learned in the law.

### Decree

The court enters the following decree nisi:

And now, to wit, April 18, 1933, it is ordered, adjudged and decreed as follows:

1. The defendant, Edith W. Smeltzer, is hereby enjoined and restrained from holding herself out as competent to draft legal papers otherwise than as conveyancer, scrivener or notary public, or as one qualified to fill the functions proper to these occupations.

2. The defendant, Edith W. Smeltzer, is hereby permitted to carry on such conveyancing, stenographic or notarial work as is authorized by law, provided such work is done without any holding out by said defendant of herself as one competent to render legal service or services such as come within the province of one admitted to the Bar of the State of Pennsylvania and learned in the law.